*By the Court,

Nelson, J.
The first question to be examined is, whether the mortgage of Bridgewater, at the time of the assignment to Winter, under the facts and circumstances detailed in the bill of exceptions, was a subsisting and valid mortgage. It was executed the 15th August, 1768, to secure the payment of £100 in one year from its date, and on the 25th December, 1783, for the consideration of £137, 9s. 8d., was duly assigned to Medcef Eden. At this time, Eden was in possession of the mortgaged premises, claiming to hold them in fee, and continued so to hold them till the 18th September, 1798, when he died. He had made 'his will on the 29th August of that year, by which he devised the premises to his son Joseph ; and also provided therein, that if either of his two sons (Joseph and Medcef) should die without lawful issue, that his share should go to the survivor. Possession was continued under this title until about the time of the assignment to Winter in 1804, making an occupation by the testator, and those claiming under him at this time, of upwards of twenty years.
Possession or occupation of land under a claim of title unexplained is evidence of a fee; and if it be continued for twenty years, is conclusive evidence, and bars the right of entry even against the real owner who may show a papqr title. Medcef Eden, the elder, then having the fee, or in judgment of law being deemed to have it, the purchase and assignment of the mortgage to him merged it in the legal estate. A court of equity will look into tire facts and circumstances attending the assignment of the lessor or equitable title, and allow it to merge or not, according to the intent and interest of the party talcing, if compatible with equity and justice; but in a court of law, the rule is absolute and inflexible. James v. Morey, 2 Cowen, 300, 313, 318. Kent’s Comm. 102. 18 Ves. 393.
Again ; at the date of the assignment to Winter, the mortgage had run about thirty-six years, and nothing appeared upon the face of it, or the bond accompanying it, to show that it was a subsisting debt against the mortgagor, or encumbrance upon the land. The presumption of law was against its validity, and upon well settled principles, the debt could not be collected by a suit upon the bond, or by foreclosure of *the mortgage. In judgment of law it was paid. 10 Johns. R. 414. Id. 281. Even without the aid of this presumption from lapse of time, it must have been apparent to Winter at the time of his purchase, that upon an account stated between the assignee in possession, and the mortgagor or his representatives, the rents and profits would have far exceeded the amount of the mortgage debt, and in that way it would have been extinguished, if the mortgager could have appeared and claimed the right of redemption ; but he no doubt could not, for upon the facts in the case, it is clear that the assignee and those claiming under him had been in possession over twenty years at the time of the transfer, which constituted a complete bar to that right, 17 Ves. 99; 3 Atk. 313; 2 Sch. & Lefroy, 686; 1 Ves. & Beame, 538; 1 Johns. R. 386; 3 id. 229; Powel on Mortg. 407, 8, 9: and the foreclosure, therefore, was idle, so far as the title of the morl *118 gagor was concerned. The case shows that in point of fact, the mortgage was considered by all parties of little if of any válue; there was due upon the face of it at the time of the assignment, principal and interest, about $900; and it was transferred, together with the interest and estate of Joseph, if not Medcef, the younger, in the house and lot it covered, for $500. The latter were sold seven months after by Winter for $2660.
The mortgage then, in my judgment, being extinguished, and not a subsisting encumbrance upon the premises, the next question is, whether Medcef Eden, the younger, and those claiming under him, are estopped by means of his assignment to Winter, from setting up this fact in destruction of the title under it ? The general doctrine of estoppels is not very clearly defined in the books, and many contradictory cases and rules may be found. It is laid down that no one shall be estopped by a recital in a deed ; and frequently, that he shall not be by a general, but shall by a particular recital. The reason of this is another rule, namely, that as estoppels preclude a man from alleging the truth, they must be certain to every intent, and are not to be sustained by argument or inference; there must be a precise affirmation to have this effect. Co. Litt. 352, b. Vin. tit. Estoppel, a. 2, M. P. 22 Com. L. R. 73. The plain reason upon which his branch of *the law seems to rest is, that every man is bound to speak and act according to the truth and fact of the case, and the law will therefore not only presume that he has done so, but will deny him the right to contradict such reasonable presumption—nemo allegans contraria est audiendus. This being the reason and foundation of the doctrine, the justice and propriety of requiring a specific affirmation or act is obvious. No one should be denied setting up the truth, unless it is in plain and clear contradiction to his former allegations and acts in the matter. Under this rule, I do not believe it would be difficult to show that there is no such specific recital or affirmation of the subsistence and validity of the mortgage in the assignment, as would preclude Medcef Eden, the younger, or those claiming under him, from setting up the fact, if it was otherwise ; and that the object and intent of the assignment, to be gathered from its terms, was to convey only the interest or estate of Joseph in the house and lot, and that the mortgage was transferred merely as a muniment of the title, without regarding it in any other light; and I entertain also a very strong conviction that this assignment of Medcef Eden, the younger, in character and capacity of executor, and under his power as such would not estop him, or those coming in under him, from setting up in his individual right an after acquired title to the premises, which might conflict with the one derived under the mortgage. Estoppels bind parties and privies—privies in blood, privies in estate and privies in law ; but in the sense and reason of this rule, would he be a party, or those claiming under him privies in blood, estate or law 1 These are points, however, in the case which I do not intend to discuss, as I am entirely clear that the doctrine of estoppel is wholly inapplicable, and that upon the facts the defendant is at liberty to urge any legal defence, or set up any title which he may have to the premises, notwithstanding the assignment.
Lord Coke divides estoppels into three kinds. The second, which is applicable to this case, is by matter in writing as by deed indented, or by making an acquittance or defeasance by deed indented or deed poll. Littleton, § 693, says, that “ if a man be disseised, and takes back an estate from the *disseisor without deed or by deed poll, this is a remitter to the disseisee” of his former estate; otherwise, if by deed indented. And Lord Coke, in his commentary, assigns as a reason for this distinction, that the deed poll is only the deed of the feoffor, donor and lessor; but the deed *119 indented is the deed of both parties, and therefore both are concluded. The soundness of the distinction between these two instruments in this respect may, I think, at this day be doubted, and there are many cases in the books where it has not been observed. One of the exceptions to the general rule of estoppel under this head is, that where the truth is apparent upon the deed or instrument, the party shall not be estopped from taking advantage of it; as, that the grantor had nothing to grant, or only a naked possibility. An instance is given in Co. Litt. 352, b. An impropriation is made, after the death of the incumbent, to a bishop and his successors; and the bishop, in the life time of the incumbent, by indenture, demiseth the parsonage for forty years, to begin after his death, which is confirmed by the dean and chapter. The incumbent dies ; the demise shall not conclude the bishop, for it appears in the same deed that he had nothing in the impropriation till after the death of the incumbent. The same position is adopted and maintained in the following authorities, and is no where questioned, and the reason of it is too manifest to require examination. Comyn’s Digest, tit. Estoppel E, 2. 4 Taunt. 23. 22 Com. Law R. 75. Vin. tit. Estoppel, A, 2. 5 Cowen, 586, 7.
Now applying this principle to the question before us, it seems to me to be decisive of it. Nearly all the facts and circumstances upon which I have considered the mortgage invalid, and not a subsisting encumbrance at the time of the assignment, appeared upon the face of the transaction. Even the possession of the mortgaged premises by Medcef Eden, the elder, during his life time is there disclosed, for his will, which is referred to, and in part recited in the assignment, asserts that fact. The length of that possession does not appear; but from what does appear, we are bound to believe that fact was known to Winter. The law charges him with that knowledge from what is disclosed in the assignment by *recital and reference. If, then, the conclusion to which we have arrived, to wit, that the mortgage was not a valid and subsisting encumbrance upon the premises is correct, Medcef Eden, the younger, might have availed himself of every fact and position from which that conclusion has been drawn and sustained, and of course all claiming under him may do the same. They are as unembarrassed, in judgment of law, in contesting the validity of the mortgage, as a stranger would be.
This view is equally applicable to the proposition of the defendants in error, that Medcef Eden, the younger, and those claiming under him, after the release or quit-claim of his interest in the lot to Winter, are estopped from setting up an after acquired title to the same. The fact that he had no interest in it releasable or assignable, appeared upon the face of the instrument, the will of Medcef, the elder, constituting a part of it. Besides, there is no covenant of warranty contained in the release, and without it there is no estoppel. Litt. § 446. Coke, 265. 18 Vin. tit. Release, G. 14 Johns. R. 193. 1 Cowen, 616. 9 id. 18. 7 Conn. R. 257. 4 Wendell, 622.
There are two cases in this court, the doctrine of which would seem to conflict with the text in Littleton, and the above cases which recognize and adopt it. The first is Jackson v. Bull, 1 Johns. Cas. 81, and Jackson v. Murray, 12 Johns. R. 201, which appears to have been decided upon the strength of the former. It does not appear in either of those cases whether there was a covenant of warranty in the deeds or not. If there was, then, they are in harmony with the cases above cited; if not, though the doctrine of them may be sound, and I am not prepared now to say it is not, I apprehend there would be difficulty in reconciling them with the rule in Littleton, and the numerous cases which have acknowledged it. Be that as it may, I do not consider the point of sufficient importance in this case to call for an examination of them. I will *121 only add that the authorities referred to in those cases do not, in my judgment, sustain the position assumed in them to the extent claimed by the learned judges. The case is there put, which is frequently found in the books, that if a man makes a lease by indenture of land which is not his, or levies a fine of an estate not vested, and he afterwards purchases the *land, he shall notwithstanding be bound by his deed, and not permitted to aver he had nothing, and the person to whom he sells will equally be estopped. But in the case thus put, the words grant and demise in the lease imply a covenant against eviction, equivalent to a warranty; and a fine is matter of record, against which no averment can be made, and the record always contains a clause of express warranty.
But it is said, that the release of Medcef Eden the younger, passed his interest or estate, whatever it might be, to Winter, and if so, he took the title independently of the mortgage. In the case of Varick v. Jackson, 2 Wendell, 200, (this same cause, with the parties reversed) the chancellor says, that they (the jury) could not have found a verdict for the plaintiff in ejectment, without deciding that the alleged assignment of the mortgage to Winter was a forgery, so far as respected Medcef Eden, the younger, because that assignment also contained a valid conveyance of all his estate in the premises. Whether such was or was not the legal effect of the assignment, conceding it to have been executed by Medcef, the younger, was not a question raised or discussed upon the argument, as the finding of the jury had superseded it. We may, therefore, reasonably infer that the examinations of the learned chancellor, had not been turned to it, and the opinion thus incidentally expressed, cannot carry with it the weight of his authority. If it were otherwise, though we should have been obliged to have come to a different conclusion, it would have been with hesitation. Littleton, § 446, says, that “no right passeth by a relea sé, but the right which the releasor hath at the time of the release made.” Lord Coke, in his commentary, distinguishes between a present right, to take effect in futuro, such as a right to a reversion or remainder, and the case put in the text. The former may be released. A release cannot operate but upon an estate, interest or right; with warranty it will bar a future-right. 18 Vin tit. Release, G. A man (by release) cannot bar himself thereby of a right that shall come thereafter to him. A remote possibility altogether uncertain, cannot be realised. Shep. Touch. 321, 322. A mere possibility cannot be released, and the reason is, a release supposeth a right in being, and it was considered *as countenancing maintenance, to transfer choses in action, possibilities and contingent interests. 5 Bac. tit. Release, H. Cruise, tit. 32, ch. 6, § 41, 42. Mr. Preston, p. 95, 205, says, that possibilities or expectancies not coupled with an interest are not devisable or releasable, but all title under them may be barred by estoppel. Of this description, are expectancies of an heir apparent or presumptive; or of persons when the -gift is to 'the survivor of them, and both are living ; or of persons who are to take under a gift to a class of persons not ascertained, as children who shall attain the age of 21, or those who shall survive their parents. Thus a grant to such children of A. as would be living at his death, a gift by one of the children, in the lifetime of A., would not be good, though such child be eventually living at the death of A.
These principles establish, 1. That Medcef Eden, during the life of Joseph, had under the will only a naked possibility of interest to the lot in question ; and 2. That such interest was unaffected by the release. One of the cases put by Mr. Preston is like the one in question. The will ordered and appointed, “ that if either of my said sons (Joseph and Medcef) should depart this life *123 without lawful issue, his share or part shall go to the survivor.” Each took an estate for life, with remainder over to the survivor, by way of executory devise. A gift to the survivor of several persons, says Mr. Preston, is a mere possibility, and cannot be released. The case of Doe, ex dem. Calkin v. Tomkinson, 2 Maule & Selw. 165, is very analogous to the present one. The testator devised as follows : “ My will and desire is, that all my real and personal estate whatsoever, be left equally to my sisters Mary and Elizabeth, or to the survivor of them, and to be disposed of by her the survivor, as she may by will devise.” Mary made her will, and devised all her lands to her sisters Elizabeth and Ann, successively for life, and from and after the decease of the survivor she devised all such parts of her real estate which was devised to her to the defendants. Elizabeth was living at the time Mary made her will, Mary survived both Elizabeth and Aim, but died without having re-published her will. The lessors were the heirs at law. Lord Ellenborough decided, that *admitting Mary and Elizabeth to be tenants in common for life, with contingent remainders in fee to the survivor, or with power to the survivor to dispose of the fee by will, it was not such a contingent remainder as was devisable by will by one, in the life time of both sisters. The reason given is, that the "person who is to take is not in any degree ascertainable before the contingency happens ; that it cannot be said in whom the interest is during the lives of the two sisters, nor consequently that it is in either of them during that period ; and it is only in the event of survivorship it becomes certain. It is then asked, how can a person be said to have a contingent interest, when it is uncertain whether he is the person who will be entitled to have it or not 1
It was said, on the argument, that a possibility of interest might be released to the tenant of the freehold, to quiet the title, though it could not be assigned or transferred. That is true of possibilities coupled with an interest or contingent interests, and the several instances in which they may be released are given in the books : Shep. Touch. 321 ; Co. 50 ; then there is a present interest or right in esse, upon which a release can operate, and the only restraint in conveying or transferring such an interest or right grows out of the law preventing champerty and maintenance. Here there is no right or interest in esse, noting upon which a release or any other conveyance can operate ; it is a naked possibility of interest, which does not ripen into a right until the contingency happens, for the reason it cannot be known till then that Medcef Eden is the person who will be entitled to this possibility or contingent interest. It goes to the survivor ; he may or may not be that person.
Upon the whole, I am of opinion, 1. That the mortgage of Bridgewater, at the time of the assignment to Winter, was not a valid and subsisting incumbrance upon the premises in question; 2. That the release or quit claim of Medcef Eden, the younger, to Winter, did not- operate to pass his contingent interest under the will, it being a naked possibility, and not a right in esse ; and 3. That he and those claiming under him are not estopped from alleging the truth in relation to the legal effect of the mortgage and release, or the *operation and effect of the assignment of Medcef Eden, the younger, and may set up an after acquired title to the premises, notwithstanding the assignment. No interest or estate of Medcef Eden, the younger, therefore, in the premises in question having passed by the assignment to Winter, he took, by virtue of it, only the interest of Joseph, which was an estate for life, that expired in August, 1813. By the repeated decisions of this court, and the court for the correction of errors, in reference to this will, *124 the estate then passed to Medcef Eden, the younger, by way of executory devise. The lessor consequently has shown no title to the premises.
There was another question discussed upon the argument which it may be proper to notice, namely, whether the execution of the assignment was proved by competent evidence.
Where there is no witness to the deed; or if there is, and he denies having any knowledge of the execution; or the name of a subscribing witness is ficticious ; or the witness is interested, or of an infamous character; or if dead, or out of the jurisdiction of the court, and after diligent inquiry, no proof of his hand writing can be made ; or if, upon like inquiry nothing can be heard of the subscribing witness, so that he can neither be produced, nor his hand writing proved ; in all these cases the execution of the deed may be proved by proving the hand writing of the party, or by his admission that he executed it. And all these qualifications of the general principle as to the proof of the execution of instruments with subscribing witnesses, are in strict observance of another rule of evidence, namely, that the best of which the nature and state of the case will admit must be produced. Phil. Ev. 363, n. a. 5 Esp. R. 16, note. Peake’s R. 23, 147. 2 East. 183. 7 T. R. 266. 1 Johns. Dig. 576, ix. 9 Cowen, 140, There was in this case, I am of opinion sufficient diligence shown in the inquiry after the subscribing witness to let in the secondary evidence, that is, proof of her hand writing; but it fell short of what the court should have required, in order to justify an entire disregard of the fact that there was a subscribing witness to the instrument, in the proof of the execution of it. The same diligence should be exacted in endeavoring to prove the hand writing that is required in #t,he endeavor to find and procure the personal attendance of the witness, at least, before the third degree of evidence is admitted, to wit, the hand writing of the party. In both these cases it should be satisfactorily proved that a reasonable, honest, and diligent inquiry has been made, without any evasion or design to overlook the witness, or the means of proving his hand writing. The bill of execeptions does not show that any attempt whatever was made to prove the hand writing of E. Bellamy. That it could not be proved is an inference drawn from the fact that no intelligence could be obtained of or concerning her since she lived at Mount Pleasant with the Edens. This we think unsound. She was then 16 or 20 years of age ; was capable of writing, as appears from her being a witness; and in the absence of any effort to prove her signature, we are not to presume it was impossible to do so. Merritt knew her, and Agnew heard of other persons who had heard of her. If we were obliged to determine whether her hand writing could or could not be proved, upon these facts, and in this way only, we should have come to a different conclusion from the court below. But the point should not be left to inference ; it was in the power of the party, upon reasonable diligence and inquiry, to have put it beyond doubt. The rule is already sufficiently relaxed, and it is within the power of parties strictly and faithfully to comply with it in all cases. If there are more subscribing witnesses to a deed than one, the court may,sometimes indulge in a latitude of discretion in relation to one, which they would not be justified in doing, if that one was the only witness.
Judgment reversed.